May it please the Court, to rule for the government in this case and authorize the removal of Mr. Molina for his only conviction that occurred nearly 20 years ago, this Court would have to reject three distinct arguments, each of which is sufficient for him to prevail. First, under Step 1 of the Landgraf Retroactivity Test, ordinary principles of statutory construction make clear that the travel provision, Section 1101A.13, was meant to apply only to convictions occurring after the statute's enactment in 1996. Second, even if it does apply retroactively in some instances, it would work a severe retroactive effect to apply that provision, and also the provision repealing 212C relief, to Mr. Molina, because anyone in Mr. Molina's shoes would have behaved differently if they had known that they would never be allowed. What would he have done? He was charged with assault with intent to commit rape? He could have done three different things, Your Honor. What does the record show? Well, the record shows that he could have done three distinct things, Your Honor. The first is he was charged, actually, with assault with intent to commit rape, and also with simple assault, and he could have offered to plead to simple assault? Well, he could have offered to take a gubernatorial pardon, too. He could have offered to be man of the year. What evidence is there that they would let this guy charged with assault with intent to commit rape plead to some minor, minor thing? Well, it's not a minor thing, Your Honor. He could have offered to plead and offered to serve. What evidence is there that they would have allowed that? Well, he made the proffer in the immigration court, so there wasn't evidence you're hearing. That's what I'm saying. The record doesn't show that he ever got such a plea offer, does it? Well, Your Honor, he didn't have the opportunity to make that record in the immigration court, because he proffered. Let's back up. Is there anything in the record to show that he was offered a plea bargain to some minor crime? No, Your Honor. Your Honor, in the excerpts at 4, he states that there's a proffer in the excerpts where the attorney says, look, he can show that he relied on the availability of this, on the availability of 212c relief. You know the problem. May I ask you just to speak very clearly, but I'd appreciate it if you spoke a little more loudly. Sure, Your Honor. No problem. But you know the problem here. We're stuck with this system of categorical crimes and so forth. We don't look at a lot of things. I'd be very interested in all the facts. We're not told not to do that. We just look at a very few fairly abstract things. But in this case. And he goes to trial, doesn't he, on a felony? He does go to trial, Your Honor. And he's convicted. Yes, Your Honor, that's correct. Okay. Well, that's the problem. Your problem. Well, let me try and explain my, because I don't think that actually precludes relief in this case for two different reasons. First, in St. Cyr, the Supreme Court's original case on the subject, the person pleads guilty. And the crime that they plead guilty to is deportable and subject to mandatory deportation under the 96 laws. The court doesn't look to see whether if he had withdrawn that plea and gone to trial, he would have won his case. That's not what the court does. Instead, they say, as a general matter, people in this position, defendants like St. Cyr, would have reasonably relied on the state of the immigration law at the time. But your premise is that he's charged with assault with intent to commit rape. And had he known what would happen, he'd plead guilty to shoplifting or jaywalking or something. Well, it's charged. Well, Your Honor, two ways to answer that question. I don't think you have to, you have to look at whether a person would have behaved differently, not whether they would have avoided deportation. The court in St. Cyr doesn't say, would he have won at trial. That takes me back to my question. What evidence do you have that he would have had any options? Well, I guess what I'm saying, I think it's a prior question, Your Honor. The court in St. Cyr doesn't look at the record. They don't look and say, oh, well, you know, this is what his option would have been if he'd gone to trial. X or Y or Z would have happened. He would have won. Instead, they just have, there's no prejudice analysis, I guess, is what I'm saying in retroactivity cases, Your Honor. The court looks at whether you would have behaved differently. And here, there are three different things he would have done. The first one, maybe I won't persuade you that he could have pled to the thing that he was charged. But there's no evidence of it. Right. Well, I guess at a minimum, Your Honor, we'd request that you remand to let him make that showing because there's a proffer. Right. And he wasn't given that opportunity. You know, the national, the amicus, the National Association of Criminal Defense Lawyers says, these are likely pleas that somebody could have gotten. Right. And they list them off. He could have offered to plead to serve anything less than five years. Right. His sentence ultimately is six years suspended to 365 days probation. Right. But he could have offered to serve four years and 300 and whatever that is, you know, 364 days. And he still would be eligible today. So at least you should let us remand on the question of whether or not he would have attained that plea agreement. Right. But even if I can't convince you on plea versus trial, Your Honor, there's two aspects of his post-trial conduct that this can be retrospective effect with respect to post-trial conduct. The first is a judicial recommendation against deportation. Right. And there's no there's no evidence needed. I mean, it is a fact that prior to November 1990, people could have gotten judicial recommendations against deportation for these grounds of deportability. Right. Now, the immigration, I mean, the criminal judge who sentenced him downward departed at the time of sentencing. So I find unusual circumstances. And on that base, that's also in the excerpts. I think it's a. Well, I'll get you the site if you'd like, Your Honor. But it's in the excerpts at the time of sentencing. It's page 13 of the excerpts. And the judge says, I find unusual circumstances. And on the basis of those unusual circumstances, I'm going to grant probation with 365 days county jail. Now, if he had asked that same judge at that same time, can you just give me a judicial recommendation against deportation, then we would not be here. That would erase the conviction for all immigration purposes that are relevant to this case. It would not be a crime involving moral turpitude. It would not be an aggravated felony. And I think that the record is sufficient to show that the criminal judge would have granted him that. And that's a separate basis on which this court can grant relief. The second thing, Your Honor, is he could have applied for 212C relief. At any time prior to 1996, he could have just affirmatively on his own applied. And that's a claim that the Second Circuit accepted in the Restrepo case. The Fifth Circuit has also accepted that claim in the Carranza case. So in 1996, what would his 212C application have looked like? At that point, he's lived here since 1974. He's already lived here more than 20 years. He has one conviction. Six years he would have gone at that point with no convictions of any kind. He's got an American wife, American children. At that point, he's the primary breadwinner for those American children. And that would have been a reasonably strong 212C application. And this court has accepted in Hernandez v. Anderson, which Judge Noonan is a person who went to trial. The person in Hernandez v. Anderson went to trial, and they won under this court's law. It's an opinion published just in the last, I think, at the end of 2007. And there they say, yes, your decision to go to trial, whether or not there's a retroactive effect on that, the decision in that case to wait and then apply for naturalization is sufficient to create a retroactive effect because the person would not have done those things if they had known that the immigration consequences would change. You know, and the same thing is true of Mr. Molina, that he would have applied affirmatively for 212C relief or sought a judicial recommendation against deportation. I want to go back, Your Honor, quickly to this point about what the record evidence needs to show, because although we would, if the court's inclined otherwise, I think we'd be happy with a remand, and on remand we would show that we'd use the evidence from the amicus national criminal defense lawyers. We could have an expert come and testify as to whether or not such kind of pleas would be likely. But I don't think that that kind of record evidence is required under this circuit's law, because the test adopted in both Hernandez v. Anderson and Rick Hammons is an objectively reasonable reliance test. And the question is just, would a reasonable person have behaved differently if they had known what the immigration consequences could be? And so the court doesn't ask, oh, well, would Mr. Hernandez v. Anderson have, excuse me, would Ms. Hernandez v. Anderson have certainly been able to avoid deportation? No, they don't go back in remand to ask, you know, what was your mental state at the time? Instead they say, would it be reasonable that a person would try to do things differently? And here I think it's pretty obvious. I mean, Mr. Molina would have tried to do things to avoid this immigration consequence if he had known that it would show up. He might not have committed the crime either. But I mean, you know. Yes, Your Honor. That claim, though, has been held to be too attenuated. Right? So they've said, look, there's not enough of a causal connection between the crime itself and the subsequent immigration consequences. And so they've rejected that. In Calaba, this Court rejected that claim. In Saravia, this Court rejected that claim. But they haven't with respect to the decision whether to plead or go to trial. You know, instead, the rationale in those cases, Your Honor, has been that when you choose to go to trial, you put your immigration status at risk. That's the ground that the leading case is Armendariz-Montoya v. Sanchez. That's the case which holds if you go to trial, you don't get 212-C relief. But you have absolutely nothing to show that he was offered a plea bargain that he turned down. No, Your Honor. As I said, there's a proffer in the immigration court. The court did not. The proffer was he would have liked to have gotten a better deal. But there's no proffer that he was offered a better deal. Well, that's true, Your Honor. But it's also about whether you would pursue it. Right? I mean, when you're in criminal court and you're looking at what the different sentencing options are, if somebody tells you, oh, in addition to your sentence, by the way, you're going to be banished forever from this country and you're never going to be able to see your kids again and you're just gone forever, then you might work a little bit harder to pursue a plea agreement. What are the downsides of committing assault with intent to commit rape? That's true, Your Honor. But if people plead guilty, then they're given an out for that. And why? They're given an out for it because they would have behaved differently if they had known at the time. And the same thing is true of Mr. Molina. The same thing is true. He did not put his immigration status at risk when he went to trial. So he's fundamentally different in that sense than the petitioner in Armendaris Montoya. All of the trial cases, all the cases which say, look, if you go to trial, then you roll the dice. And so you put your immigration status at risk. In every single one of those cases, if the person had lost and had gotten the maximum sentence, or not even the maximum sentence, if they'd gotten many times the sentence that they did get, then they would have lost their immigration status. But that wasn't true of Mr. Molina. I mean, when he went to trial, he knew or he believed that this would not create any future immigration problems for him with respect to his deportability or his taking brief trips abroad. Your Honor, what I'm going to reserve. You said you wanted to reserve. Yeah, I wanted to reserve. But why don't I reserve the remainder of my time? Thank you very much, sir. Thank you. Good morning, Your Honors. May it please the Court, Charles Tanner on behalf of the Attorney General. First of all, the proffer is found at page 407. 407 of the administrative record filed in the 05, the 05 docket number. And the proffer is nothing more than he had offered to plea, and he will testify that he had offered to plea to a simple assault,  instead of trying to plead to a higher offense in hopes of getting a lower sentence. He did, in fact, choose to go forward at trial in the hopes that he could prove his innocence, but also with the knowledge that under the law at the time, in early 1990, he would have qualified for a 212C relief.  I think that with that proffer, there's no basis to remand. It's just simply for further factual development. I don't think that's proper under the statute. He's never argued before the Board that he was somehow denied an opportunity to present evidence. So I don't think that a lack of evidence or the mere fact that he only proffered some evidence is grounds for remand. Mr. Molina was convicted in 1990 by a jury of assault with intent to commit rape. As Petitioner's Counsel pointed out, he had upwards of seven years to affirmatively seek 212C relief, and he didn't do so. I think that's relevant when he now claims, only once he finds himself in proceedings, that he was relying on the availability of 212C relief all the while, when, in fact, there's never any indication that he made any attempts to regularize his status. Second, when he was convicted, if he had been sentenced to the full six years and served that six years, he would not be eligible for 212C relief under the M.A.C.T. provisions and under this Court's Saravia-Paguada decision. And when he was convicted, his conviction rendered him excludable. So it did carry an immigration consequence. If he traveled outside the country and that travel was not innocent, casual, and brief, to fit under the Flutie doctrine, he would have been excludable. So what he should have done if he was concerned about his immigration status and if he was really relying on 212C would have been, A, not travel abroad, B, wait at least until he's affirmatively regularized his status, waive the grounds of excludability, and then travel abroad. But he didn't do so. How do you think we should consider the sentence he actually got? I don't think the sentence that he actually received, Your Honor, is relevant to his eligibility for 212C here. I think the only important fact as far as his eligibility for 212C is that he was convicted by a jury trial. The length of the sentence, that might be a factor that, for example, an immigration judge could consider if he were eligible to seek 212C relief. That is when the judge is weighing the discretionary factors. But I don't think it's, for this court, I'm not sure that it's relevant at all. Despite what the statute says, it was not a sentence really for a felony. And I believe you suggest that, well, the state judge just made a mistake, but is that really the way we should look at it? No, I don't mean to suggest that the state judge made a mistake. I think the state judge, in his discretion, gave a six-year sentence, suspended it, and ordered 365 days in jail. As a condition of probation. Right. He doesn't make it a misdemeanor. He makes it felony probation with the jail condition. Is that right? I believe so. Yeah. And so I don't think he was charged with a felony. I think the sentence is enough to show that. I don't think he's arguing that he's not been convicted of a felony. I think really the point, after we sift through all of the cases that the courts decided on these retroactivity issues, it really does boil down simply to reliance. And I'm afraid with 212C that I cannot, I don't believe that there's any way for Molina to get around Armendariz-Montoya, Calava, Saravia, that in going to trial, there's simply not the sort of reliance interest that gives rise to the retroactivity concerns. I think there's a bit of a, there's an imprecision in the terminology that we use because we say Mr. Molina or any alien chose to go to trial. In fact, going to trial, that's the default position. You choose to plead guilty or you might choose to reject a plea offer, but you don't choose to go to trial. If you're charged, you're going to go to trial unless you plead guilty. And when you choose to go to trial, there's, I fell into the same mistake. When you go to trial, you, you know, as he, as he is admitted in his proffer, ultimately you're hoping that you're going to be acquitted. You take chances, you take your chances that, you know, you'll be convicted. Here, Mr. Molina took his chances that he might receive a sentence that would render him ultimately, given the enactment of the Immigration Act of 1990, ineligible for 212C relief. So I'm afraid that there's just not, there's not any sort of reliance that is sufficient to trigger retroactivity because you're looking for, you're looking for a choice. You're looking for, to say what would have been done differently. Here he's saying sort of unremarkably that, well, given that I'm facing, had I known, you know, ahead of time that all of these cases would be decided and that these statutes would have been enacted, I'd have done all sorts of different things. I don't think that's, that's not quite what's, that's not, that there's no relation to the Supreme Court's concerns in St. Cyr where the Supreme Court's found that, determined that aliens who plead guilty, quote, almost certainly relied on the availability of 212C relief. That they're aware of their, the immigration consequences. And that there's a, there's a fairness aspect when an alien is pled guilty. That you, in pleading guilty, you have rendered yourself deportable. You have put yourself sort of at the mercy of the ability to seek some form of discretionary relief. That's not the case when you're, when you've gone to trial because when you've gone to trial, again, your first hope is that you've, that you'll be acquitted. And the other thing is, I think the only time where we could conceivably see a situation where, where an alien who's gone to trial has sufficiently relied enough to trigger retroactivity concern, is where there's, there's a decision, where there's, there's an offer by, by the, the prosecutor that said, you know, that, that renders a person, a conviction that would not make you deportable or inadmissible, as the case may be. And there's some evidence that, that that was rejected because there's some form of relief available under the immigration law so that the, the immigration consequences are, are, are mitigated. But that's not what's, what's for this court. There's a claim that he tried to plead to simple assault and the prosecutor rejected it and the jury agreed that he had committed assault with intent to commit rape. Finally, I think there's a, there is an issue of, of maybe of jurisprudential concern in this case and others like it. And that's in these, in retroactivity cases and in 212C cases. As, as the concurrence noted in the Abebe decision, the 212C relief is of diminishing importance because as we get farther and farther away from the repeal of 212C, there's fewer, fewer and fewer aliens who are covered by it who, who, who could have, could, you know, would have been eligible. And the concurrence in Abebe noted that there's no reason to be, you know, changing the rules at this point and, you know, in that case, you know, against aliens seeking 212C relief, departing from other, from the majority of other circuits in light of, in light of the diminishing importance of 212C. But the same thing is true here. There's, there's little if nothing in, in Mr. Molina's arguments that wouldn't open up 212C eligibility for virtually every alien who has, who has committed a deportable or excludable offense and was convicted by, by jury trial. So with that in mind, I think, you know, to the extent that this Court thinks, well, you know, it's under, under our precedent, it's not clear, we're not sure, you know, which way do we go, I think the Court should certainly, as a, as a jurisprudential matter, err on the side of continuing the status quo, which is Armendariz, Montoya, Calava, and Saravia to deny eligibility for, for 212C relief to aliens convicted by jury trial. Thank you very much. Thank you. Mr. Arnold-Hannifin, you get the last word. A few things, Your Honor. First, the post-trial conduct claim is completely distinct from the claim about whether or not he relied, at the time he chose to go to trial, or didn't, right? And the, the, this Court has accepted such a claim in Hernandez v. Anderson, a person who went to trial, lost a trial, but still won a retroactivity claim based on their conduct occurring after the trial itself. Both the Second Circuit and the Fifth Circuit have rejected the plea trial line, in cases that I think are weaker than ours, but perhaps we disagree about that. They've rejected that, but nonetheless found retroactive effects for post-trial conduct in those cases. It's Restrepo in the Second Circuit, Carranza in the Fifth Circuit. What do you say about Mr. Kanner's argument that he had seven years to apply for 212C? Yes, Your Honor. That, that proves the strength of our claim. He didn't apply for it because he didn't need it. He didn't need it. He wasn't deportable at that time, so he had no reason to apply for 212C. He could have done it. If he had known of the immigration consequence, he could have done it at any of those points prior. Suppose he applied for 212C and then didn't get it, then what would have happened to him? Well, then he'd now be ineligible for 212C, right? So then when he traveled and came back, he wouldn't be able to waive the conviction and he would, he'd be deportable. In fact, that's not true. He would have been deported then. He could have been put into, you know, removed proceedings then. Right. That's the risk. That's why he didn't apply for 212C. So, no, but no, Your Honor, he didn't apply for 212C because he wasn't deportable at all. I mean, he had no reason to apply for it. He had no immigration consequences to face unless he took a long trip and came back. But since he had established his residence in the U.S., could take brief trips in return, he had no reason to apply for it. Second, Your Honor, the judicial recommendation against deportation is a separate basis of post-trial conduct that this Court can rely on. As I said, the sentencing judge found unusual reasons to give a lower sentence. Your account of the sentence, we agree with, Your Honor. It's 365 days felony probation. If you would ask the judge at that time, okay, no, but we also want to deport this person on that basis, then there's a good chance the judge would have said, look, I find unusual circumstances here. I'm not going to banish this person on the basis of this offense. And that's the claim. And, Your Honor, we don't ask in Hernandez v. Anderson, and in St. Cyr, they don't ask, oh, well, would you have actually won at your trial in St. Cyr? That's not the question they ask. In Hernandez v. Anderson, they don't ask, oh, would you have actually been able to avoid ICE officers coming to your house and pick you up? They don't say that. They just say, yeah, would you have behaved differently? They would have. Now, there's one other thing I want to say on the plea trial line, and then I'll stop talking about it, which is just this. Your Honor, he could have pled to this conviction. And so the question, oh, what were other deals that were available and things like that, I mean, that's only a secondary consideration. If he had pled guilty to this crime, right, and served this sentence in his plea, he would today be eligible for 212c relief. So that's what makes it different for Armendariz, Montoya, and all the other cases. You know, he did not put his immigration status at risk even by getting this conviction. So instead, what we have here is a system where the agency is now saying, if you pled guilty, we let you apply for 212c relief. If you get the same conviction, same sentence by going to trial, we punish you for it. What's the authority for that, that if he had pled straight up to the charge as charged, he would have gotten? Because, Your Honor, it's under charges. Is there any case that says that? Well, Your Honor, you have to look at the immigration consequences of this conviction. Imagine he pled to it. He gets 365 days, six years suspended for a crime involving moral turpitude. He serves less than five years, right, way less. I mean, I'm aware of cases that say if he pleads as part of a plea bargain, he gets the sincere direct. Exactly. And that's exactly true. I don't know of any cases as if he just pleads straight up without a plea bargain that that would apply. I'm asking if you have a case that says that. Oh, I see. Well, Your Honor, I don't, Your Honor. But I should say, I mean, every case involves, I mean, 90 percent of the cases plead. Right? But they plead pursuant to a plea agreement. Right. You're saying, okay, if he didn't have a plea agreement, he just pled straight up, he would be in the same position. I'm saying, do you have a case that says that, and you say no. No. No, they're not. Okay. I see your time is up. Thanks very much. And other counsel, too. The case just argued is submitted. Good morning. Thank you. 0770962 Calderon v. Mukasey. Each side will have ten minutes.
judges: Noonan, Silverman, Conlon